**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMIT MAHAJAN, )<br>          )<br>          Plaintiff, )<br>          )<br>     v. )<br>          )<br>SANGEETA KUMAR (aka SANGEETA )<br>KUMARI), RAJNESH KUMAR, VISMA )<br>KUMAR, and iFREEDOM DIRECT )<br>CORPORATION (formerly NEW )<br>FREEDOM MORTGAGE COMPANY), )<br>          )<br>          Defendants. )<br>_____) | CV F 06-1728 AWI SMS<br><br>MEMORANDUM OPINION<br>AND ORDER ON DEFENDANT<br>iFREEDOM DIRECT'S<br>(formerly NEW FREEDOM<br>MORTGAGE COMPANY'S)<br>MOTION TO DISMISS<br>PURSUANT TO F.R.C.P. §<br>12(b)(6)<br><br>[Document #5] |

     This is an action in diversity for damages by Plaintiff Amit Mahajan ("Plaintiff") against defendants Sangeeta Kumar (aka Sangeeta Kumari) (hereinafter "Sangeeta"), Rajnesh Kumar, Visma Kumar and iFreedom Direct Corp. (formerly New Freedom Mortgage) (hereinafter "iFreedom") (collectively "Defendants").  The complaint alleges a total of nine common law tort claims for relief for the alleged misappropriation by Defendants of money sent by Plaintiff to Sangeeta for the purpose of purchasing a house and for a personal loan.  In the instant motion to dismiss, defendant iFreedom moves to dismiss all claims against it on the ground the complaint does not state any claims against iFreedom for which relief may be granted.  For the reasons that follow, the court will gant iFreedom's motion to dismiss. Diversity jurisdiction exists pursuant to 28 U.S.C., section 1332.  Venue is proper in this district.

**PROCEDURAL HISTORY**

This case was removed from the Superior Court of Mercer County, New Jersey, to the District Court for the District of New Jersey on May 19, 2006. Defendant iFreedom moved to dismiss on grounds of improper venue on June 12, 2006, and the individual defendants moved to dismiss for lack of personal jurisdiction on June 27, 2006. On November 22, 2006, the District Court of New Jersey ordered the case transferred to this district and denied as moot all pending motions to dismiss or quash based on improper venue or lack of personal jurisdiction.

The instant motion by iFreedom to dismiss all claims against it was filed on January 5, 2007. Plaintiff has filed no opposition or statement of non-opposition to iFreedom's motion as of the date of this order. Proof of service to Plaintiff's attorney of record was also filed on January 5, 2007. Oral argument, which was originally scheduled for March 5. 2007, was ordered vacated on March 2, 2007. The matter was taken under submission as of March 5, 2007.

**PLAINTIFF'S ALLEGED FACTS**

Plaintiff is a resident of Mercer County, New Jersey. Beginning at a time unknown, Plaintiff began a correspondence with Sangeeta after the latter "reached out" through an internet dating service. After some time, it became known to Plaintiff that Sangeeta was a real estate broker[1] working with defendant iFreedom (then New Freedom Mortgage Corp.) Relying on Sangeeta's representations and statements, Plaintiff formed the intent to purchase a house in California for himself and in his name only. Sangeeta told Plaintiff she would handle the transaction for Plaintiff and, by her representations, induced Plaintiff to send her substantially all of his savings. Plaintiff understood that Sangeeta would move into his house

---

[1] It is not clear from the complaint whether the word "broker" is intended in its technical meaning as defined by California Business and Professions Code, section 10150, or whether the term is used more generally to include both real estate broker and real estate salesperson as defined by section 10151.

if their romantic interests blossomed.

Plaintiff alleges that Sangeeta received the money Plaintiff sent and she, and/or one or more of the named individual defendants deposited the money in a bank account belonging to Sangeeta and/or the individual defendants. Plaintiff alleges that Defendants continued to misrepresent to Plaintiff that they intended to use the money Plaintiff sent to buy a house on Plaintiffs behalf and in Plaintiff's name. No such house was ever purchased and the money was never returned. Plaintiff also alleges that in the early part of May of 2005, Sangeeta falsely represented to Plaintiff that she owed money to an attorney and convinced Plaintiff that if he loaned her the money, she would pay Plaintiff back. Relying on Sangeeta's representations, Plaintiff loaned the requested money which has never been paid back. Plaintiff alleges Defendants do not even acknowledge the loan.

Plaintiff alleges that on or about late September of 2005, Defendants ceased all communication with Plaintiff and closed the bank accounts that held the funds Defendants received from Plaintiff. Defendants have not returned any of Plaintiff's money.

With regard to iFreedom, Plaintiff's first claim for relief for fraud alleges "defendant New Freedom Mortgage Corporation approved, endorsed and benefitted from the actions of [Sangeeta], or was otherwise reckless in its disregard of the actions of its employee, [Sangeeta]." Complaint at ¶ 17. Plaintiff also generally alleges that Sangeeta held herself out at all times as a broker working for iFreedom. Plaintiff's second through fifth claims for relief allege common law claims for conversion, money had and received, tortious interference with prospective business advantage, and intentional infliction of emotional distress, respectively. Other than the general allegation with respect to Plaintiff's first claim for relief, the remaining five of the first six claims for relief allege no particular acts on the part of iFreedom.

Plaintiff' sixth and seventh claims for relief are alleged against iFreedom only. The sixth claim alleges negligent hiring , supervision, and retention against iFreedom, and the

3

seventh claim alleges *respondeat superior*. Plaintiffs eighth and ninth claims for relief allege improper procurement and use, respectively, of a credit report on Plaintiff by both Sangeeta and iFreedom.

## LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990). A Rule 12(b)(6) dismissal can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984). In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). In deciding a Rule 12(b)(6) motion, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981). Dismissal is proper if a complaint is vague, conclusory, and fails to set forth any material facts in support of the allegation. See North Star Intern. v. Arizona Corp. Com'n, 720 F.2d 578, 583 (9th Cir.1983).

## DISCUSSION

**I. Plaintiff's First Through Fifth Claims for Relief and *Respondeat Superior***

Other that the conclusory allegation that iFreedom "approved, endorsed and benefitted from the actions of [Sangeeta], or was otherwise reckless in its disregard" of Sangeeta's actions, Plaintiff alleges no facts that tie iFreedom to any alleged wrongdoing with respect to Plaintiff's first five claims for relief. Plaintiff does not, for example, contend

4

that he was induced to send money on the basis of representations made by iFreedom, or that iFreedom received money from Plaintiff, or any agreement or understanding existed between iFreedom and Plaintiff, or that iFreedom refused to communicate with Plaintiff.  Plaintiff does not allege that any of the contact that occurred between Plaintiff and Sangeeta or any of the other individual Defendants occurred by way of communications facilities controlled by iFreedom, or that communications occurred during company time or that any person at iFreedom, other than Sangeeta, endorsed, approved, or had any knowledge whatsoever of the representations that were made to Plaintiff or of any acts by Plaintiff in reliance on those representations.

Because Plaintiff alleges no acts by iFreedom in furtherance of any of the bad acts alleged in Plaintiff's first five claims for relief, iFreedom cannot be held liable except and unless it can be shown that iFreedom is vicariously liable on a theory of *respondeat superior*. "In an ordinary diversity case, federal courts apply the substantive law of the forum in which the court is located." Ins. Co. of N. America v. Federal Express Corp., 189 F.3d 914, 919 (9th Cir. 1999).

> Under California law, the determinative factor in establishing vicarious liability under the doctrine of *respondeat superior* is not whether the employee's act was authorized, but whether the act was committed in the course of carrying out the employer's business. [Citations.] Vicarious liability thus may attach for unauthorized, or even prohibited, conduct, if the risk of that conduct is one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer, [Citations.] By contrast, vicarious liability does not attach if the employee has substantially deviated from his duties for personal purposes. [Citation.]

Pelletier v. Federal Home Loan Bank of San Francisco, 968 F.2d 865, 876 (9th Cir. 1992).

An employee's intentional tort will be imputed to the employer if there is a "causal nexus" between the intentional tort and the employee's work.  Lisa M. v. Henry Mayo Newhall Mem'l Hosp., 12 Cal.4th 291, 297 (1995).  The "causal nexus" requirement is met only if the intentional tort was "'engendered by the employment' or arose therefrom." Ins. Co. of N. America, 189 F.3d at 922 (quoting Lisa M., 12 Cal.4th at 297).

5

The first five claims for relief in Plaintiff's complaint allege intentional torts involving the acts of individual defendants without any discernable connection to the enterprise or business of iFreedom. The business of iFreedom is mortgages. The complaint does not allege Plaintiff ever sought or applied for or contemplated a mortgage from iFreedom. The actions alleged against the individual Defendants' were aimed primarily at separating Plaintiff from his savings, not in applying Plaintiff's savings to the purchase of any product that iFreedom sells or any transaction that would benefit iFreedom. The individual Defendants' alleged actions are centered on Sangeeta and her family and their personal bank accounts and personal contacts with Plaintiff. Thus, the alleged actions are clearly contrary to iFreedom's interests and purposes and represent a substantial deviation from Sangeeta's duties as an employee or representative of iFreedom.

The court finds there is no causal nexus between iFreedom and the actions alleged against Sangeeta or the other individual Defendants. Because there is no causal nexus, iFreedom cannot be held vicariously liable for the acts alleged in first five claims for relief alleged in the complaint.

**II. Negligent Hiring and/or Supervision**

"Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees. The tort has developed in California in factual settings where the plaintiff's injury occurred in the workplace, or the contact between the plaintiff and the employee was generated by the employment relationship." Mendoza v. City of Los Angeles, 66 Cal.App.4th 1333, 1339-1340 (2nd Dist. 1998). The plaintiff must be injured as a result of his connection with the employment lest the employer become "the insurer of the safety of a person with whom its employees come into contact, regardless of their relationship to the employer." Id. at 1341.

Here, as iFreedom points out, there is no alleged connection between iFreedom's employment of Sangeeta and Plaintiff's injury except for the general allegation that Sangeeta held herself out as an "agent" of iFreedom. Plaintiff alleges that iFreedom "authorized" Sangeeta to hold herself out as an agent and that Plaintiff was defrauded as a result of "this authority which was given to her by [iFreedom]." Complaint at ¶ 43. This "authorization" however, cannot be held to establish a connection between Plaintiff and Sangeeta's employment. As discussed above, Plaintiff does not allege injury that occurred because Sangeeta performed her job incompetently or even maliciously. Plaintiff was harmed because of acts by Sangeeta and the other individual Defendants that lay entirely outside of Sangeeta's employment.

Plaintiff also alleges that Sangeeta caused a credit inquiry to be made into Plaintiff's credit report. Complaint at ¶ 44. However, Plaintiff alleges in the next paragraph that initiating the credit inquiry was beyond the scope of Sangeeta's employment. Plaintiff thus admits that the initiation of the report was external to Sangeeta's employment with iFreedom. The court will address separately Plaintiff's claims for relief on the ground of improper credit investigation. It is sufficient for purposes of Plaintiffs claim for negligent hiring/supervision that Sangeeta's actions with regard to the credit investigation were not part of her employment with iFreedom.

To successfully allege negligent hiring, training or supervision, there must be a "but for" connection between the employment and the harm. Mendoza,66 Cal.App,4th at 1342. Because the harm Plaintiff alleges was not connected to Sangeeta's employment with iFreedom, Plaintiff's complaint does not state a claim for negligent hiring or supervision upon which relief can be granted.

**III. Claims Eight and Nine – Unlawfully Obtaining a Credit Report and Improper Use**

Plaintiff alleges Defendants Sangeeta and iFreedom obtained a credit report on Plaintiff under false pretenses in violation of the Fair Credit Reporting Act ("FCRA") 15

7

U.S.C., section[2] 1681n. Section 1681n provides for civil liability against "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer . . . ." Section 1681n(a). Subsection 1681n(b) was added as a result of the 1996 amendment and closely tracks the language of 1681n(q), which provides criminal liability for anyone who knowingly and willingly obtains a credit report under false pretenses. Section 1681n(b) provides civil liability against "[a]ny person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose . . . ." See Hansen v. Morgan, 582 F.2d 1214, 1221 (9 Cir. 1978) (holding noncompliance with the provisions of section 1681q prohibiting obtaining a report by false pretenses also states a claim for civil liability for willful noncompliance under section 1681n).

"The standard for determining when a consumer report has been obtained under false pretenses will usually be defined in relation to the permissible purposes of consumer reports which are enumerated in [section 1681b]." Id. at 1219. "Stated differently, because § 1681b provides the only permissible purposes for issuing a credit report, and the credit reporting agency cannot issue a report for any other purpose, the only way a user can obtain a credit report for impermissible purposes is to misrepresent the purpose for obtaining the report." Williams v. AT&T Wireless Serv., 5 F.Supp.2d 1142, 1148 (D. Wash. 1998) (internal citations omitted).[3]

It is significant that Plaintiff alleges his claim for improper procurement of a credit report on the ground of false pretenses pursuant to section 1861n rather than on the ground of negligence pursuant to section 1861o. Because Plaintiff has not alleged negligence, the court

---

[2] Section numbers hereinafter refer to sections of Title 15 of the United States Code unless otherwise specified.

[3] In its motion to dismiss, iFreedom does not raise the issue of whether section 1861n supports separate claims for both improper use of a credit report and procurement under false pretenses. The court will not address the issue here but notes that in light of the authority cited, it appears section 1861n does not provide a basis for a separate claim of improper use.

8

need not decide whether Plaintiff has adequately alleged iFreedom failed to appropriately limit access to credit reporting capability in order to reasonably protect Plaintiff from harm. Rather, the court need only decide whether Plaintiff has adequately alleged that iFreedom willingly sought Plaintiff's credit report under false pretenses, or whether iFreedom is vicariously liable for Sangeeta's acquisition of a credit report under false pretenses.

Consistent with the foregoing discussion, the court finds Plaintiff has alleged no facts that would support a claim that iFreedom itself willingly submitted a credit report request under false pretenses. The issue before the court, therefore, is whether iFreedom is vicariously liable for Sangeeta's acts in what the court accepts, *arguendo*, was the submission of a request for credit report under false pretenses.

The FCRA provides no statutory basis for vicarious liability. Jones v. Federated Fin. Reserve Corp., 144 F.3d 961, 964 (6th Cir. 1998). In Jones, the appellate court, held that where there is no statutory basis for vicarious liability, courts look to common law bases for holding an entity vicariously liable for the actions of its agent or employee. Id. at 965. The Jones court discussed three major types of agency liability; express or implicit authorization of the employee's conduct, *respondeat superior* theory, and apparent authority. Similarly the Fourth Circuit Court of Appeals has applied the common law doctrines of *respondeat superior* and apparent authority to the issue of vicarious liability for violation of section 1861n. Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 972-973( 4th Cir. 1987). While this court is not aware of any Ninth Circuit case directly addressing this issue, other district courts within this circuit have followed Jones. See Myers v. Bennett Law Offices, 238 F.Supp2d 1196, 1202 (D. Nev. 2002).

Of the three common law theories of vicarious liability discussed in Jones, the first – express or implicit authorization – is clearly not applicable here because there is no allegation that any officer, supervisor or director of iFreedom knew of, let alone approved of, Sangeeta's application under false pretenses. As to the second theory of vicarious liability,

that of *respondeat superior*, the court's prior discussion applies as well to the issue of whether iFreedom can be held liable for Sangeeta's procurement of Plaintiff's credit report under false pretenses.

Here, as before, there are no facts alleged that would tend to establish a causal nexus between Sangeeta's work for iFreedom and the procurement of the credit report. There is no allegation that Plaintiff had applied for a loan, signed any documents filed with iFreedom, or entered into any agreement with any person acting in the capacity of a representative of iFreedom. So far as can be discerned from the complaint, Sangeeta's application for Plaintiff's credit report arose solely as a consequence of personal communications that transpired between Sangeeta and Plaintiff. No facts are alleged to indicate that iFreedom would have had any reason to request a credit report on Plaintiff as a consequence of its business. The court therefore finds Plaintiff has not alleged facts sufficient to state a claim for relief against iFreedom on a theory of *respondeat superior*.

"[A] principal may be vicariously liable for an agent's tortious conduct based upon an apparent authority theory, if *the principal* cloaked its agent with apparent authority, i.e., held the agent out to third parties as possessing sufficient authority co commit the particular act in question, and there was reliance upon the apparent authority." Jones, 144 F.3d at 965 (italics added). Here, vicarious liability on a theory of apparent authority does not apply because the principal, iFreedom, did not hold Sangeeta out to Plaintiff as its agent with authority to request credit information on Plaintiff's behalf. The complaint alleges Sangeeta held herself out. So far as can be discerned from the complaint, Plaintiff had no conversation with anyone from iFreedom other than Sangeeta and those communications that did occur were conducted at a personal level and outside of Sangeeta's work for iFreedom.

As something of an aside, there is a second problem with Plaintiff's complaint pertaining to claims related to the procurement of the credit report under false pretenses that does not weigh heavily in this discussion but may become significant if the complaint is

10

further amended.  In Plaintiff's sixth claim for relief on the ground of negligent hiring and supervision, Plaintiff alleges that the credit inquiry was *beyond the scope* of Sangeeta's employment with iFreedom.  In Plaintiff's seventh claim for relief on the theory of *respondeat superior*, Plaintiff alleges that the credit inquiry was *within the scope* of Sangeeta's employment with iFreedom.  While a plaintiff is free to allege competing or contradictory theories of recovery, a plaintiff is not free to allege contradictory facts.  In the present context, the authority of an employee to do a particular task is a matter of fact, not a legal conclusion.  If the complaint is to be amended further, Plaintiff is advised to check factual allegations for consistency.

The court finds Plaintiff has failed to allege facts that, if true, would be sufficient to state any claims for relief as to defendant iFreedom.

THEREFORE, in consideration of the foregoing discussion, iFreedom's motion to dismiss all claims for relief as to it is hereby GRANTED.  All Claims against iFreedom are DISMISSED.  Leave is granted to further amend the complaint.  Any further amendment of the complaint shall be filed and served not later than thirty (30) days from the date of service of this order.

IT IS SO ORDERED.

**Dated:      April 27, 2007**                                          **/s/ Anthony W. Ishii**
                                                                                UNITED STATES DISTRICT JUDGE