1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMIT MAHAJAN, | )     CV F 06-1728 AWI SMS |
|        **Plaintiff**, | ) |
| | )     **ORDER ON MOTION OF** |
|     v. | )     **DEFENDANT iFREEDOM TO** |
| | )     **DISMISS THE FIRST** |
| SANGEETA KUMAR (aka SANGEETA | )     **AMENDED COMPLAINT** |
| KUMARI), et al., | ) |
| | )     **F.R.C.P. 12(b)(6)** |
|        **Defendants.** | ) |
| _____ | ) |

      This is an action in diversity for damages and declaratory relief by plaintiff Amit

Mahajan ("Plaintiff") against defendants Sangeeta Kumar ("Sangeeta") and other individuals

and against iFreedom Direct Corporation ("iFreedom") a Utah mortgage lending company

(collectively, "Defendants").  In the instant motion, iFreedom moves for dismissal on all or

part of the First Amended Complaint ("FAC") as to iFreedom only.  The motion for dismissal

is pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons that

follow, iFreedom's motion to dismiss will be granted in part and denied in part.

### PROCEDURAL HISTORY

      This action was transferred from the District of New Jersey on November 30, 2006.

On April 30, 2007, the court dismissed the complaint  with respect to iFreedom only, and

granted leave to amend.  On January 18, 2008, the court denied Plaintiff's motion for

reconsideration pursuant to Rule 60(b) of the Federal Rules of Civil Procedure and granted

1    thirty days to file an amended complaint.  The currently operative First Amended Complaint

2    ("FAC") was filed on February 19, 2008.  The instant motion to dismiss was filed by

3    iFreedom on March 3, 2008.  Plaintiff's opposition was filed on March 28, 2008, and

4    iFreedom's reply was filed on April 4, 2008.  The hearing on the iFreedom's motion to

5    dismiss was vacated and the matter was taken under submission as of April 14, 2008.

6                                    **LEGAL STANDARD**

7            A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

8    Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of

9    the claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73

10   (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police

11   Department, 901 F.2d 696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on

12   the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a

13   cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th

14   Cir.1984).  In considering a motion to dismiss, the court must accept as true the allegations of

15   the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740

16   (1976), construe the pleading in the light most favorable to the party opposing the motion,

17   and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g

18   denied, 396 U.S. 869 (1969).  In deciding a Rule 12(b)(6) motion, courts do not "assume the

19   truth of legal conclusions merely because they are cast in the form of factual allegations."

20   Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir.1981).

21                        **PLAINTIFF'S FACTUAL ALLEGATIONS**

22          For purposes of this motion, Plaintiff's allegations regarding the individual

23   Defendants are not directly at issue and the court's prior summary of their actions as

24   summarized by the court in its order of April 30, 2007, is sufficient:

25          Plaintiff is a resident of Mercer County, New Jersey.  Beginning at a time
       unknown, Plaintiff began a correspondence with Sangeeta after the latter
26     "reached out" through an internet dating service.  After some time, it became
       known to Plaintiff that Sangeeta was a real estate broker working with
27     defendant iFreedom (then New Freedom Mortgage Corp.)  Relying on
       Sangeeta's representations and statements, Plaintiff formed the intent to
28     purchase a house in California for himself and in his name only.  Sangeeta told

                                           2

Plaintiff she would handle the transaction for Plaintiff and, by her representations, induced Plaintiff to send her substantially all of his savings. Plaintiff understood that Sangeeta would move into his house if their romantic interests blossomed.

Plaintiff alleges that Sangeeta received the money Plaintiff sent and she, and/or one or more of the named individual defendants deposited the money in a bank account belonging to Sangeeta and/or the individual defendants. Plaintiff alleges that Defendants continued to misrepresent to Plaintiff that they intended to use the money Plaintiff sent to buy a house on Plaintiffs behalf and in Plaintiff's name.  No such house was ever purchased and the money was never returned.  Plaintiff also alleges that in the early part of May of 2005, Sangeeta falsely represented to Plaintiff that she owed money to an attorney and convinced Plaintiff that if he loaned her the money, she would pay Plaintiff back.  Relying on Sangeeta's representations, Plaintiff loaned the requested money which has never been paid back.  Plaintiff alleges Defendants do not even acknowledge the loan.

Plaintiff alleges that on or about late September of 2005, Defendants ceased all communication with Plaintiff and closed the bank accounts that held the funds Defendants received from Plaintiff.  Defendants have not returned any of Plaintiff's money.

Doc. # 17 at 2:16 - 3:14.

The court's order of April 30, 3007, dismissed the original complaint with respect to iFreedom because the complaint failed to allege facts that connected Sangeeta's alleged acts to her employment at iFreedom.  The FAC alleges a total of eleven claims for relief.  All of the claims are alleged against iFreedom and one claim for relief is alleged only against iFreedom.  In all but one of the claims alleged, Plaintiff's theory of liability as to iFreedom is that iFreedom is responsible under a theory of respondeat superior for the wrongful acts of their employee, Sangeeta.  The FAC alleges facts not alleged in the original complaint that, in sum, are aimed connecting at the wrong alleged to Sangeeta's employment with iFreedom.

The following are general facts newly alleged in the FAC with respect to all claims for relief:

The FAC alleges that communications from Sangeeta to Plaintiff originated from, or were sent to, her e-mail address at Skumari@nfmcorp.com or her work telephone number, both of which were controlled by iFreedom.  The FAC alleges contact between Plaintiff and Sangeeta occurred using iFreedom's e-mail account and telephone number during iFreedom's normal working hours.  The FAC alleges that, because Sangeeta communicated to Plaintiff

3

via these official company channels, he was led to believe that "the purchase of his house in California was legitimate and a part of [Sangeeta's] duties while employed with defendant iFreedom." FAC, Doc. # 47 at 4:1 - 4:16.

In each of the claims the FAC alleges the following:

> The wrongful acts of the defendant Sangeeta arose out of and in the course and scope of her employment with, and/or was engendered by her employment with, defendant iFreedom; and such wrongful acts were an outgrowth of such employment, and inherent in her working environment, and typical of or broadly incidental to her employer's enterprise; and all such acts were done knowingly, and/or ratified by defendant iFreedom; and defendant iFreedom knew or should have known of the acts and/or the propensity of the defendant to engage in the acts complained of herein.

In the discussion that follows, this passage is referred to as the "vicarious actions paragraph."

The first five claims for relief in the FAC allege, in order, the common law torts of fraud, conversion, money had and received, interference with prospective business advantage, and intentional infliction of emotional distress. With respect to the first claim for relief for fraud and deceit, the FAC alleges that "defendant iFreedom approved, endorsed and benefited from the actions of defendant Sangeeta, or was otherwise reckless in its disregard of the actions of its employee, defendant Sangeeta." Doc.# 47 at 6:11-13. With respect to the fifth claim for relief for intentional infliction of emotional distress, the FAC also alleges that "defendant Sangeeta convinced plaintiff to engage in a real estate transaction by using this romantic interest to gain [P]laintiff's trust and her status as a licensed real estate salesperson and employee of defendant iFreedom to defraud [P]laintiff. Doc. # 47 at 11:8-10.

Plaintiff's sixth claim for relief is against iFreedom only for negligent hiring, supervision and retention. In addition to alleging the vicarious actions paragraph, Plaintiff's fifth claim for relief alleges Sangeeta was authorized by iFreedom to hold herself out as a real estate agent as a result of her employment and that Plaintiff was defrauded because of the authority given to her by iFreedom. The sixth claim for relief also alleges that Sangeeta used defendant iFreedom's office to make an inquiry into Plaintiff's credit report without the knowledge or consent of Plaintiff. The FAC alleges the obtaining of credit reports on customers was within Sangeeta's scope of employment with iFreedom.

4

1   Plaintiff's seventh claim for relief alleges respondeat superior against defendant

2   iFreedom only.  The FAC essentially repeats the allegations that Sangeeta was authorized by

3   iFreedom to hold herself out as an agent of iFreedom and that she caused an unauthorized

4   credit inquiry into Plaintiff's credit report using iFreedom's facilities.

5   Plaintiff's eighth, ninth and tenth claims for relief are related to Sangeeta's inquiry

6   into Plaintiff's credit report.  The Eighth claim for relief alleges obtaining a credit report

7   under false pretenses in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.

8   section 1681n, against iFreedom and Sangeeta.  The ninth claim for relief alleges negligent

9   non-compliance with the FCRA in violation of 15 U.S.C. section 1681o (also against

10  iFreedom and Sangeeta), and the tenth claim for relief alleges improper use of a credit report.

11  The eighth, ninth and tenth claims for relief repeat the allegations that Sangeeta caused an

12  unauthorized inquiry into Plaintiff's credit report using iFreedom's facilities and repeats the

13  vicarious actions paragraph.

14  Plaintiff's eleventh and final claim for relief alleges negligent misrepresentation

15  against all defendants.  The facts supporting the allegation relate to statements made by the

16  individual defendants upon which Plaintiff relied when he sent money to Sangeeta.  The only

17  facts alleged by the FAC that connect iFreedom to the wrongful conduct are set forth in the

18  vicarious actions paragraph.

**DISCUSSION**

**I. Claims 1 through 5**

21  As was the case with Plaintiff's original complaint, the FAC alleges liability against

22  iFreedom on the theory of respondeat superior.  "In an ordinary diversity case, federal courts

23  apply the substantive law of the forum in which the court is located."  <u>Ins. Co. of N. America</u>

24  <u>v. Federal Express Corp.</u>, 189 F.3d 914, 919 (9th Cir. 1999).  "The basic test for vicarious

25  liability [under the doctrine of respondeat superior] is whether the employee's tort was

26  committed within the scope of employment."  <u>Kephart v. Genuity, Inc.</u>, 136 Cal.App.4th 280,

27  291 (3rd Dist. 2006).  The determination of the scope of employment can be difficult to

28  determine and a number of formulations have been set forth in cases reflecting different

5

1    circumstances.  Id.

2    
3    
4    
5    
6    

> Under California law, the determinative factor in establishing vicarious
> liability under the doctrine of *respondeat superior* is not whether the
> employee's act was authorized, but whether the act was committed in the
> course of carrying out the employer's business. [Citations.] Vicarious liability
> thus may attach for unauthorized, or even prohibited, conduct, if the risk of
> that conduct is one that may fairly be regarded as typical of or broadly
> incidental to the enterprise undertaken by the employer,  [Citations.] By
> contrast, vicarious liability does not attach if the employee has substantially
> deviated from his duties for personal purposes. [Citation.]

7    Pelletier v. Federal Home Loan Bank of San Francisco, 968 F.2d 865, 876 (9th Cir. 1992).

8         "The determination of an employee's intentional tort will be imputed to the employer

9    if there is a "causal nexus" between the intentional tort and the employee's work.  Lisa M. v.

10   Henry Mayo Newhall Mem'l Hosp., 12 Cal.4th 291, 297 (1995).  The "causal nexus"

11   requirement is met only if the intentional tort was "'engendered by the employment' or arose

12   therefrom."  Ins. Co. of N. America, 189 F.3d at 922 (quoting Lisa M., 12 Cal.4th at 297).

13   This requirement for a causal nexus has been variously described as requiring that the

14   employee's tort be "an 'outgrowth' of his employment, 'inherent in the working

15   environment,' 'typical of or broadly incidental to' the employer's business, or, in a general

16   way, foreseeable from [the employees] duties. [Citation.]" Yamaguchi v. Harnsmut, 106

17   Cal.App.4th 472, 482 (1st Dist. 2003) (quoting Lisa M. 12 Cal.4th at pp. 296, 298-299).

18        The imposition of vicarious liability must be "consistent with the public policies

19   behind the doctrine of respondeat superior: '(1) to prevent recurrence of the tortious conduct;

20   (2) to give greater assurance of compensation for the victim; and (3) to ensure that the

21   victim's losses will be equitably borne by those who benefit from the enterprise that gave rise

22   to the injury.'" Id. at 485-486 (quoting Mary M. v. City of Los Angeles, 54 Cal.3d 202, 209

23   (1991)).  In this regard, an employees tortious act will not be held generally foreseeable from

24   the employee's duties if the employee's conduct is "'so unusual or startling that it would

25   seem unfair to include the loss resulting from it among the other costs of the employer's

26   business.' [Citations.]" Lisa M., 12 Cal.4th at 299.

27        Whether Sangeeta's alleged acts were with the scope of her employment is a question

28   of fact that Plaintiff will be required to prove.  Yamaguchi, 106 Cal.App.4th at 482.

6

However, in the context of a motion to dismiss, if Plaintiff has alleged facts that, if proven, *could* allow a reasonable juror to find that Sangeeta was acting within the scope of her employment with respect to at least some portion of the harm Plaintiff suffered, the motion to dismiss will be defeated as to any claims for relief that rely upon a theory of respondeat superior.  Id.

The parties agree that the first five claims for relief in the FAC are claims that are based on a theory of respondeat superior.  These five claims are the same as the first five claims in the original complaint, which were dismissed as to iFreedom by the court's order of April 30, 2007, because no facts were alleged that indicated there was a causal nexus between Sangeeta's employment at iFreedom and the wrongful acts that harmed Plaintiff.  The question before the court with respect to the first five claims for relief is therefore whether the FAC presents facts sufficient to allege or directly infer a causal nexus.  As to Plaintiff's first five claims for relief, the parties have not addressed the issue of whether Plaintff's allegations are sufficient to state a claim for relief as to the underlying tort against the individual Defendants.  In analyzing iFreedoms claims that it cannot be held vicariously liable as to the first five claims for relief, the court has no occasion to analyze whether Plaintiff has adequately pled the elements of the underlying tort and the court expresses no opinion thereon.

There are three facts alleged in the FAC that were not alleged in the original complaint and that play directly on the issue of whether the wrongful acts arose from or were engendered by Sangeeta's employment with iFreedom such that a causal nexus might be inferred.  The first is that Plaintiff contacted Sangeeta and/or Sangeeta contacted plaintiff through Sangeeta's e-mail account and telephone at iFreedom.  The second alleged fact is that the contacts that did occur through Sangeeta's e-mail and telephone at iFreedom occurred during Sangeeta's normal working hours.  Third, the FAC alleges that, because Plaintiff contacted Sangeeta at her workplace during normal working hours using iFreedom's communications facilities, Plaintiff was led to subjectively believe that his contact with Sangeeta with respect to the purchase of a house "was legitimate and a part of [Sangeeta's]

7

1    duties" as a real estate agent working for iFreedom.  FAC at 4:13-15.

2         Defendant iFreedom's basic argument with respect to respondeat superior is that

3    iFreedom cannot be held liable for Sangeeta's wrongful acts because those acts "must be

4    categorized as a 'frolic . . . in which [Sangeeta] substantially deviated from the employer's

5    purpose.'" Doc. # 48 at 8:20-21 (quoting Nationwide Mut. Ins. Co. v. Liberatore, 408 F.3d

6    1158, 1164 (9th Cir. 2005).  Defendants bolster this argument by pointing out that Sangeeta

7    originally reached out to Plaintiff through an on-line dating service not connected with

8    iFreedom, that her ongoing contacts with Plaintiff occurred, at least in part, at times and

9    using facilities not connected with iFreedom and that the actual conversion of funds is

10   alleged to have been done mainly by Sangeeta's family, who are not employees of iFreedom.

11        The court agrees with Plaintiff's contention that two categories of wrongful acts are at

12   issue in this case.  Seen from Plaintiff's point of view, his funds that were sent to Sangeeta

13   had two purposes; to lend assistance to Sangeeta for her personal needs, and to buy a house.

14   Defendant iFreedom's portrayal of a frolic in which Sangeeta substantially deviated from the

15   employer's purpose is not compelling in the context of a motion to dismiss in which all

16   inferences must be made in favor of the non-moving party.  Defendant iFreedom is in the

17   business of making mortgage loans and Sangeeta's part in that business was presumably to

18   facilitate the purchases of property that would be funded by iFreedom's mortgage.  While it

19   did not actually serve iFreedom's purposes when Sangeeta diverted the funds Plaintiff sent to

20   buy the house into the individual Defendants' accounts; from Plaintiff's perspective, there

21   was no deviation from iFreedom's purpose.  Plaintiff thought he was buying a house.

22        The FAC alleges facts sufficient to permit a rational trier of fact to find that Plaintiff

23   thought he was dealing with iFreedom when he sent funds to Sangeeta for the purchase of the

24   house.  Plaintiff sent money to a person he knew was an employee of iFreedom because she

25   could be reached at an iFreedom telephone number and had an iFreedom e-mail address.  The

26   sending of money, to the extent Plaintiff intended that money to go to his housing purchase,

27   could be inferred to be entirely within the normal course of business from Plaintiff's point of

28   view.

                                          8

1       The court finds that the FAC alleges facts that, if proven, would allow a rational trier

2  of fact to find that there is a causal nexus between Sangeeta's employment at iFreedom and

3  the harm Plaintiff suffered as to the first five claims for relief to the extent that the harm arose

4  from Plaintiff's effort to buy a house through Sangeeta.  The issue of damages is not before

5  the court at this time, but as a preliminary matter, the court sees no basis for iFreedom's

6  liability for financial losses incurred by Plaintiff that were not connected directly to his effort

7  to buy a home.  Similarly, iFreedom cannot be held vicariously liable for the acts of non-

8  employees.  To the extent Plaintiff's harm resulted from the fraudulent acts of persons other

9  than Sangeeta, iFreedom is not liable.  With those limitations on Plaintiff's damages claims

10 in mind, the court finds dismissal of Plaintiff's first five claims for relief is not warranted at

11 the pleading stage.

12 **II. Claim Six – Negligent Hiring, Retention and Supervision**

13      Plaintiff's sixth claim for relief alleges negligent hiring, retention and supervision

14 against iFreedom only.  Plaintiff's sixth claim for relief fails because it is inadequately pled.

15 Plaintiff's claim makes two basic factual allegations.  Plaintiff alleges that Sangeeta was

16 employed by iFreedom as a real estate sales person authorized to hold herself out as

17 iFreedom's agent.  Second, the FAC alleges Sangeeta made a request for a consumer credit

18 report on Plaintiff without Plaintiff's knowledge or permission.  Plaintiff also alleges that

19 "iFreedom negligently hired, supervised and retained defendant Sangeeta." and repeats the

20 vicarious actions paragraph quoted above.

21      Plaintiff's allegation that iFreedom negligently hired, supervised and retained

22 Sangeeta is a legal conclusion presented as fact, and as such is not supportive of Plaintiff's

23 claim.  Western Mining Council, 643 F.2d at 624.  Similarly, the vicarious actions paragraph

24 that is repeated in Plaintiff's sixth claim contains only conclusory statements that are likewise

25 not sufficient to state a factual basis for Plaintiff's claim.  Stripped of its conclusory

26 allegations, Plaintiff's sixth claim for relief alleges only that Sangeeta worked for iFreedom

27 and was its agent and that Sangeeta obtained a consumer credit report on Plaintiff without

28 Plaintiff's knowledge or consent.  There is absolutely no factual allegation anywhere in the

complaint that alleges what iFreedom's duty to Plaintiff was, how the duty was breached and how the breach was the proximate cause of the harms Plaintiff suffered.  Even if Plaintiff had alleged that Plaintiff had a duty to protect Plaintiff from harm (which Plaintiff did not allege), that allegation would not be sufficient.  There must be at least some indication of how iFreedom's actions constituted a breach of that duty that led to Plaintiff's harm.

Because Plaintiff's sixth claim for relief allege none of the elements of negligence as to defendant iFreedom, the claim will be dismissed.

**III.  Claim Seven – Respondeat Superior**

Plaintiff's seventh claim for relief makes the factual allegations that Plaintiff was defrauded by Defendants and that Sangeeta caused an improper credit inquiry to be made and a report to be obtained by Sangeeta.  In terms of its factual allegations, Plaintiff's seventh claim for relief is duplicative of the claims alleged in the first through fifth, eighth, ninth and tenth claims for relief.  The title of the claim – respondeat superior – is the theory used by Plaintiff to claim liability against iFreedom as to the above-listed claims for relief.  The court cannot discern any basis for a free-standing claim based on the facts alleged or the legal theory presented.  Plaintiff's seventh claim for relief will therefore be stricken as duplicative.

**IV.  Claims Eight and Nine – Improper Request of Credit Report**

Claims eight and nine allege willful violation of the FCRA pursuant to 15 U.S.C. section 1681n, and negligent violation of the FCRA pursuant to section 1681o, respectively.  Both claims allege the improper credit inquiry was made on April 19, 2005.  Plaintiff's eighth claim alleges no facts that specifically tie the credit inquiry with Sangeeta's employment.  The only factual allegations are the previously-quoted vicarious actions paragraph, which contains only conclusory statements without supporting facts and the general allegation that the "obtaining of credit reports was within the scope of Sangeeta's employment with iFreedom." Plaintiff's ninth claim for relief, by contrast, alleges that the credit inquiry was made from the offices of iFreedom.  The court will infer, for purposes of this discussion, that there was only one request for a credit report and that the request is alleged to have been made from the office of iFreedom.

10

1    To state a claim for wilful violation of the FCRA pursuant to 15 U.S.C. section 1681n,

2    Plaintiff must allege facts to show that: (1) Defendants obtained a "consumer report" from a

3    "consumer reporting agency," (2) Defendants obtained the report under false pretenses or

4    knowingly without a permissible purpose, and (3) Defendant acted willfully.  Myers v. Bennet

5    Law Offices, 238 F.Supp.2d 1196, 1201 (D. Nev. 2002); section 1681n.  Before the court can

6    address the issue of whether iFreedom is vicariously or directly liable for the violation, the

7    court must address wether Plaintiff's eighth claim for relief is adequately pled as to Sangeeta.

8    The court begins by cautioning Plaintiff to be more attentive to the need to make

9    factual allegations that are consistent with the terminology used in the statute upon which the

10   claim is based.  The FAC alleges that Defendants "caused a credit inquiry to be made into

11   [P]laintiff's credit report,"  FAC at 13:16, and that Defendants "improperly obtained" "the

12   credit inquiry of April 19, 2005."  FAC at 14:10.  15 U.S.C. section 1681n establishes civil

13   liability for "a natural person who obtains a *consumer report* under false pretenses . . . ."  Id.

14   (italics added).  It is by no means obvious that Plaintiff means "consumer report" when he

15   uses the phrase "credit inquiry."  "Credit inquiry" would naturally suggest an application for a

16   credit or "consumer" report from a credit reporting agency, not the report itself.  Only because

17   iFreedom does not complain about the inexactness of Plaintiff's choice of words will the court

18   presume that by "credit inquiry" Plaintiff means to allege that Defendants requested and

19   received a "consumer report" within the meaning of section 1681n.  The court will similarly

20   presume the request for the consumer report was made to a consumer reporting agency.  The

21   court will also take the final leap and supply by inference the allegation that Sangeeta acted

22   wilfully.  While the omission of such a central element in a claim for relief might otherwise be

23   fatal to the claim, the court will supply the inference here because willfulness can be fairly

24   inferred from the FAC as a whole and because the court does not desire to waste time on

25   another motion to dismiss a further amendment of the complaint.

26   The court finds or infers that Plaintiff has pled, albeit minimally, facts to support a

27   prima facie claim of violation of 15U.S.C. section 1681n as to Sangeeta.  The next question is

28   whether Plaintiff has alleged facts sufficient to attach liability for Sangeeta's alleged acts to

1    iFreedom.

2            Plaintiff alleges that obtaining consumer credit reports was within the scope of

3    Sangeeta's employment and, by implication, the report was requested from iFreedom's office.

4    Based on those two allegations, the court finds that Plaintiff has alleged facts upon which a

5    rational trier of fact could find defendant iFreedom vicariously liable for Sangeeta's act, albeit

6    just barely.  Accepting as fact for purposes of this motion Plaintiff's allegation that Sangeeta

7    obtaining credit reports was within the scope of Sangeeta's employment at iFreedom, and

8    accepting that the request for the offending credit report was made at iFreedom's office during

9    office hours, a rational trier of fact could infer that: (1) iFreedom can be held liable under

10   agency theory because Sangeeta was cloaked with authority to use iFreedom's facilities and

11   password to obtain such reports, <u>see Myers</u>, 238 F.Supp.2d at 1202; or (2) iFreedom can be

12   held liability under the theory of respondeat superior because obtaining such reports was

13   within the scope of Sangeeta's duties such that it was reasonably foreseeable that such a tort

14   could arise from Sangeeta's performance of her duties.  <u>Yamaguchi</u>, 106 Cal.App.4th at 482.

15   Dismissal of Plaintiff's eighth claim for relief is therefore not appropriate as to iFreedom at

16   the pleading stage.

17           Plaintiff's ninth claim for relief for negligent violation of FCRA in violation of 15

18   U.S.C. 1681o is not adequately pled.  While the court could supply the allegation of a request

19   for a consumer report from a credit reporting agency as it did above, the court will not supply

20   the allegation of negligence.  With respect to Sangeeta, the facts generally alleged in the FAC

21   point to actions taken willfully and knowingly.  A claim of willful violation of FCRA does not

22   state or incorporate a claim of negligent violation.  <u>Myers</u>, 238 F.Supp.2d at 1204.  The court

23   cannot conjure the missing allegation of negligence out of alleged facts that generally point to

24   willful misconduct.  Because the court cannot supply allegations supporting Sangeeta's

25   liability, Plaintiff's claim against iFreedom must fail for lack of specificity.

26           There are two possible theories that could explain Plaintiff's claim that iFreedom is

27   liable for the  negligent violation of FCRA.  Either it is Plaintiff's contention that iFreedom is

28   vicariously liable under a theory of respondeat superior for Sangeeta's negligent violation, or

                                                12

iFreedom was directly liable because it was negligent in preventing Sangeeta's willful violation. Plaintiff does not address either theory. Any claim that iFreedom is liable on a theory of respondeat superior for Sangeeta's negligence must fail because Plaintiff has not adequately pled negligence with respect to Sangeeta. Any claim that iFreedom is liable because it was directly negligent must also fail because Plaintiff has not pled the elements of negligence as to iFreedom. Plaintiff's ninth claim for relief will be dismissed.

**V.  Claim Ten – Improper Use of Credit Report**

Plaintiff's tenth claim for relief alleges improper use of a consumer report against Sangeeta and iFreedom. Again, the court will supply the presumption that by "credit inquiry" Plaintiff means "consumer report." The claim fails because no legal basis for entitlement to relief is alleged and because there is no factual allegation that the consumer report was used in any way whatsoever. So far as the court can discern, improper use of a consumer report is not directly actionable under section 1681. To the extent FCRA creates remedies for inappropriate *use* of consumer reports, the remedies for such improper use are incorporated in allowable damages resulting from either willful or negligent non-compliance with FCRA. 15 U.S.C. § 1681n(a)(1)(B). Plaintiff alleges no other legal basis for relief. Plaintiff's tenth claim for relief will be dismissed.

**VI.  Claim Eleven – Negligent Misrepresentation**

Plaintiff's eleventh claim for relief alleges negligent misrepresentation against all defendants. Plaintiff's eleventh claim alleges no facts that are particular to iFreedom other than the conclusory statements that are set forth in the previously-quoted vicarious actions paragraph. While Plaintiff's claim alleges that Defendants entered into a financial relationship with Plaintiff in order to buy a home, there is no evidence anywhere in the FAC that Plaintiff entered into an agreement with iFreedom or that iFreedom directly made any representations to Plaintiff, other than the representations that may have been made by Sangeeta. Thus, there are no facts alleged that would support a claim of negligent misrepresentation against iFreedom on a theory of direct liability. The only basis for attaching liability against iFreedom for negligent misrepresentation is on a theory of respondeat superior or agency.

13

1    The tort of negligent misrepresentation consists of the same elements as the tort of

2    fraud except that negligent misrepresentation does not require scienter or intent to defraud.

3    McClain v. Octagon Plaza, LLC., 159 Cal.App.4th 784, 792-793 (2nd Dist. 2008).  As such,

4    negligent misrepresentation is analogous to a "lesser included offense" of fraud.  Because

5    Plaintiff realleges and incorporates allegations made with respect to all other claims for relief

6    in his eleventh claim for relief, the court must infer that at least some of the instances of

7    negligent misrepresentation include instances of contact between Sangeeta and Plaintiff that

8    were carried out with the intent of buying a house during iFreedom's normal business hours

9    using iFreedom's communications facilities.  It also follows that to the extent iFreedom can be

10   held vicariously liable for fraudulent statements by Sangeeta that related to Plaintiff's effort to

11   purchase a home, those same acts could give rise to iFreedom's liability under vicarious

12   liability if the representations that caused the harm were found by a jury to be negligent, rather

13   than motivated by an intent to defraud.  As was the case with Plaintiff's first five claims for

14   relief, the court finds that a rational trier of fact could find that there is a causal nexus between

15   Sangeeta's employment at iFreedom and the harm Plaintiff suffered as a result of Sangeeta's

16   negligent representations to the extent that the harm arose from Plaintiff's effort to buy a

17   house through Sangeeta and to the extent the negligent representations were made by

18   Sangeeta.  Plaintiff's eleventh claim for relief will not be dismissed, but damages arising out

19   of the claim are subject to the same limitations noted as to the first five claims for relief.

20

21   THEREFORE, in accordance with the foregoing discussion:

22   1.    Defendant iFreedom's motion to dismiss claims one through five of the FAC is

23         DENIED.

24   2.    Defendant iFreedom's motion to dismiss claim six of the FAC is GRANTED.

25   3.    Plaintiff's seventh claim for relief for "Respondeat Superior" is hereby STRICKEN as

26         duplicative as to all Defendants.

27   4.    Defendant iFreedom's motion to dismiss Plaintiff's eighth claim for relief for willfully

28         obtaining a consumer credit report under false pretenses is DENIED.

14

5.   Defendant iFreedom's motion to dismiss Plaintiff's ninth claim for relief for negligent violation of FCRA is GRANTED as to defendant iFreedom only.

6.   Defendant iFreedom's motion to dismiss Plaintiff's tenth claim for relief for improper use of a consumer credit report is GRANTED as to all Defendants.

7.   Defendant iFreedom's motion to dismiss Plaintiff's eleventh claim for relief for negligent misrepresentation is DENIED.


IT IS SO ORDERED.

**Dated:    May 27, 2008**                          **/s/ Anthony W. Ishii**
                                    UNITED STATES DISTRICT JUDGE